# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

### CASE NO:

DAVID ULERY, individually and
on behalf of all others similarly situated,

      Plaintiff,

      v.

OPTIMA SOLUTIONS, LLC,

      Defendant.

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

      Plaintiff, DAVID ULERY (hereinafter "Plaintiff"), brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant, OPTIMA SOLUTIONS, LLC, ("OPTIMA" and/or "Defendant"), for its violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

      1.    Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.     In the course of promoting, marketing, and selling products and services, Defendant and/or its agents placed thousands of nonconsensual text message advertisements to consumers' telephone numbers nationwide using an automatic telephone dialing system in violation of the TCPA.

3.     Plaintiff and each Class Member received unwanted robo-text messages from Defendant without proper regard to the TCPA, the Do-Not-Call Rules, and in disregard for individual privacy. Plaintiff and Class Members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all texts that were sent by Defendant to Plaintiff and Class Members from approximately December 2018, through the date of preliminary approval of class certification

4.     "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1]  The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

5.     The TCPA was designed to prevent texts like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

6.     Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers

---

[1]     *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

2

including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

7.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8.    In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

## JURISDICTION AND VENUE

9.    This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of the unlawful and unwanted texts to Plaintiff and Class Members in this District on their residential telephone numbers with Colorado area codes.

11.    Plaintiff resides in Colorado Springs, Colorado, where the subject text messages were received, within the jurisdiction of this Honorable Court.

12.    The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of this state by placing texts to Plaintiff and Class Members from this state whose residential telephone numbers have Colorado area codes.

13.    Defendant, either directly or through persons on its behalf, purposely directed its activities to the State of Colorado by placing telephone calls to Plaintiff and Class Members with Colorado area codes, thereby targeting telephone numbers and persons within the State of Colorado. By doing so, Defendant markets its commercial product or services to residents of the State of Colorado, and Plaintiff's claims arise from the same type of activity that was directed to other Colorado residents.

## PARTIES

14.    Plaintiff's domicile is in Colorado Springs, Colorado.

15.    Defendant, OPTIMA is a Florida Company and citizen of the state of Florida listing its principal address at 3510 N.W. 171st Street, Miami Gardens, FL 33056. OPTIMA lists its registered agent as INC AUTHORITY RA, at 390 North Orange Avenue, Suite 2300-N, Orlando, FL 32801.

16.    OPTIMA is a marketing company that provides marketing, search engine optimization, lead generation, marketing automation, sales enablement, and other marketing and support services for other businesses.  It promotes and markets products and services throughout the country, including during the relevant time period, by sending unsolicited text message advertisements to wireless telephone users in violation of the TPCA.

17.    Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## **FACTUAL ALLEGATIONS**

18.    At all times relevant, Plaintiff, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

19.    Defendant is authorized to engage in business in the State of Colorado, and at all times mentioned herein was a corporation and "person," as defined by 47 U.S.C. § 153(39).

20.    At all times relevant Defendant conducted business in the State of Colorado, within this judicial district.

21.    Defendant utilizes bulk text messaging to send unsolicited text messages promoting products including at least 4 unconsented text messages to Plaintiff on October 10, 2022, October 30, 2022, November 7, 2022, and January 17, 2023.

22.    For example, the October 10, 2022, unsolicited text message sent to Plaintiff's cellular residential telephone ending in "7000" is depicted below for demonstrative purposes:



23.    The link in the text message directed Plaintiff to the below landing page:



24.    The "Claim Now" link on the landing page directed Plaintiff to https://tryaeronutra.com/af1/?pub=9256&click_id=521082073&c1=&c2=735166780&c3= to purchase UltraBio Slim Keto Gummies, which is depicted below:





25.    After receiving the text message advertisement Plaintiff responded with "STOP," yet he continued to receive at least 2 more text message advertisements for the dietary supplement Keto weight loss and fat management products after replying "STOP."

26.    "STOP" is universally recognized by mobile message senders as an express revocation of consent to receive text messages.

27.    Then, on January 16, 2023, Plaintiff received another unsolicited text message promoting the sale of a product called Erectin, which is depicted below for demonstrative purposes:



28.    Other consumers have received the identical text and have publicly complained on social media pages such as Twitter. For example:



29.    The Erectin website has the identical layout as the Keto gummies website. Likewise, the names of the websites are substantially similar – "tryaeronutra.com" and "tryhormonadalabs.com."

30.    Investigation into the registrants of these sites revealed that they also both utilize the same third-party registrant, NameCheap, Inc., – through a privacy service provided by Withheld for Privacy to conceal their true ownership from public view –a common tactic utilized by unscrupulous telemarketers to avoid liability.

31.    Solely for the purpose of investigating the source of these repeated and unwanted solicitations, Plaintiff provided a "dummy" credit card for the Erectin product.  The declined transaction identified the seller as "DAZZLING DRAPERY ESSENTIA833-2161548."

32.    Plaintiff called the seller on January 17, 2023 to further investigate the source of the texts. After much probing, a female representative named Tricia finally revealed that she worked for a third party company called Optima Solutions that assists with the sites.  Indeed, OPTIMA, assists other websites with CRM, driving revenue, and generating prospects. *See* <https://landing.optimasolutions.io/> (last visited Feb. 22, 2023).

33.    Based upon information and belief, and investigation of Plaintiff and counsel, OPTIMA facilitates or is the marketer, promoter, and/or seller of the products advertised to Plaintiff in the text messages.

34.    Plaintiff did not want to receive these text messages and texted "STOP," despite Defendant's failure to provide any opt-out instructions, but Defendant nevertheless continued to send the text messages to Plaintiff.

35.    Further Plaintiff's personal residential telephone number with a Colorado area code, and ending in 7000 has been registered on the national Do-Not-Call Registry since February 6th, 2008.

36.    Plaintiff's complete telephone number will be provided directly to counsel for the Defendant in discovery. Plaintiff is not providing his complete telephone number on this publicly filed document to prevent further harm, and more invasion of his privacy and unwanted intrusion into his phone.

37.    Through the unsolicited text messages, Defendant contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

38.   Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39.   Upon information and belief, this ATDS has the capacity to store numbers and to dial numbers without human intervention.

40.   Upon information and belief, Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

41.   The impersonal and generic nature of the text messages further demonstrates that Defendant used an ATDS to send the subject messages.

42.   The fact that "STOP" messages were sent to Defendant's system without any human seeing or responding to those messages, and that further texts were automatically and continually sent after being told to "STOP," further demonstrates that Defendant used an ATDS to send the subject text message.

43.   The text messages constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

44.   Plaintiff did not provide Defendant or its agents prior express consent to receive text messages, including unsolicited text messages, to his cellular telephone, pursuant to 47 U.S.C.

45.   The unsolicited text message sent by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

46.   Defendant is and was aware that it is placing unsolicited robocalls / texts to Plaintiff and other consumers without their prior express consent.

47.   At all times relevant herein, Plaintiff was the subscriber and personal, residential user, and customary user of his cellular telephone number that Defendant texted and is financially

responsible for phone service, including the cellular costs and data usage incurred as a result of the unlawful texts made to Plaintiff by Defendant.

48.    Plaintiff wasted time investigating to discover the company responsible for the unwanted, illegal and unauthorized texts to Plaintiff's personal cell phone.

49.    Plaintiff was damaged by Defendants' text messages. In addition to using Plaintiff's cellular data, battery life, and phone storage, his privacy was wrongfully invaded, causing intrusion upon his seclusion, intrusion and trespass upon his person property, harassment, annoyance, aggravation, frustration, distraction, inconvenience, embarrassment, time spent investigating, and risk of future harm. Indeed, Plaintiff texted "STOP," but Defendant continued to text him and Class Members. Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted, robo-text messages, forcing him to divert attention away from his work, home life, and other personal and family activities.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this class action under Rule 23(a), (b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **ROBOCALL CLASS:** All persons in the United States who, within the four (4) years prior to the filing of the original Complaint received a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's products or services, using a similar dialing system used to call Plaintiff, without the recipients' prior express written consent, in violation of the TCPA.

> **DO NOT CALL REGISTRY CLASS:**  All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants' claim (a) they did not obtain prior express written consent, or (b) they obtained prior express written consent in the same

manner as Defendants claim they supposedly obtained prior express written consent to call the Plaintiff.

**INTERNAL DNC CLASS:** All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) encouraging the purchase of Defendant's property, goods, or services, (3) to said person's residential telephone number, (4) after requesting that Defendant "stop" or making similar request.

**SELLER IDENTIFICATION CLASS:** All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number, (4) that did not disclose the name of the individual caller, the name of the person or entity on whose behalf the call is being made, or a telephone number or address at which the person or entity may be contacted.

51.    Excluded from the Class are Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or their subsidiaries or affiliates, and members of the federal judiciary.

52.    This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

53.    **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized SPAM campaign texts placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members.  Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

54.    Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's calls and personnel records.

55.    Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

56.    **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

    a.    Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any unsolicited text message(s) (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or texting system to any telephone number assigned to a cellular phone service;

    b.    Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

    c.    How Defendant obtained the numbers of Plaintiff and Class members;

    d.    Whether the dialing system used to send the subject text messages is an Automatic Telephone Dialing System;

    e.    Whether Defendant engaged in telemarketing when it sent the text messages which are the subject of this lawsuit;

f.   Whether the text messages sent to Plaintiff and Class Members violate the TCPA and its regulations;

g.   Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

h.   Whether Defendant instituted procedures for maintaining a list of persons who request not to receive telemarketing calls that met the standards set forth in 47 C.F.R. § 64.1200(d)

i.   Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

j.   Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

k.   Whether Plaintiff and the Class are entitled to any other relief.

57.   One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

58.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

59.   Plaintiff and members of the Class each received at least one SPAM text message, advertising one or more of Defendant's products, which Defendant placed or caused to be placed to Plaintiff and the members of the Class.

60.   **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the

Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

61. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

62. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing

violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted texts.

### COUNT I
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Robocall Class)**

63.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 62 of this Complaint as though fully stated herein.

64.    The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

65.    Defendant has violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent

66.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

67.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

68.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

69.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

70.    As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

71.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT II
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

72. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 62 of this Complaint as though fully stated herein.

73.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74.    Plaintiff's telephone number ending in 7000 has been registered on the national Do-Not-Call Registry since February 6th, 2008.

75.    47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

76.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity

has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

77.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

78.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

79.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

80.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT III
## VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200
### (On Behalf of Plaintiff and the Internal DNC Class)

81.     Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 62 of this Complaint as though fully stated herein.

82.      In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> **(1)** *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> **(2)** *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> **(3)** *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an

affiliated entity.

\*                    \*                    \*

(**6**) ***Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

83.     Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

84.     Plaintiff and the Internal DNC Class members made requests to not to receive future text message solicitations.

85.     Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

86.     As outlined in detail above, Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

87.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call sent by, or on behalf of, Defendant.

88.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

89.     Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

### COUNT IV
### VIOLATIONS OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(d)
### (<u>On Behalf of Plaintiff and the Seller Identification Class</u>)

90.     Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 101 of this Complaint as though fully stated herein.

91.      In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> **(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

92.     Pursuant to 47 C.F.R § 64.1200(c), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

93.     Defendant violated the requirements of section 64.1200(d)(4) by failing to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and (3) a telephone number or address at which Defendant may be contacted.

94.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Seller Identification Class members are entitled to an award of $500.00 in statutory damages, for each call sent by Defendant or on Defendant's behalf. To the extent Defendant's misconduct is determined to be

willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. Statutory damages of $500 per text, per violation of the TCPA;

c. Willful damages at $1,500 per text, per violation of the TCPA;

d. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction prohibiting Defendant from using an automatic telephone dialing system to text numbers assigned to cellular telephones without the prior express written consent of the called party;

f. An injunction prohibiting Defendant from calling any individual whose number appears on the National Do Not Call Registry and on Defendant's internal DNC lilst;

g. Reasonable attorney's fees and costs; and

h. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

**Dated this 20th day of April, 2023.**

Respectfully Submitted,

**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
*Counsel for Plaintiff*

By: */s/ Joshua H. Eggnatz*
JOSHUA H. EGGNATZ, ESQUIRE
Florida Bar No. 006726
(*to be admitted Pro Hac Vice*)
*JEggnatz@JusticeEarned.com*
*MPascucci@JusticeEarned.com*

**JORDAN RICHARDS, PLLC**
1800 SE 10th Avenue, Suite 205
Fort Lauderdale, Florida 33316
Tel: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*